MUYLAERT v. ERICKSON

1. NEGLIGENCE—EVIDENCE—CONCLUSIONS—QUESTIONS OF FACT—AP-
   PEAL AND ERROR.
      Analyzing the testimony in a negligence case and drawing con-
      clusions from it are proper jury functions and it is not within
      the province of an appellate court to substitute its opinion
      for that of the jury if there is evidence to support the jury's
      finding.

2. NEGLIGENCE—EVIDENCE—SUFFICIENCY—BROKEN LADDER.
      Refusal of trial court to take negligence action from the jury
      because of insufficient evidence *held*, proper in action for in-
      juries suffered by plaintiff who fell while helping defendant
      paint his house when defendant's ladder allegedly collapsed,
      where plaintiff was unable to produce the ladder and no ex-
      amination of it was possible because defendant had destroyed
      it shortly after the accident occurred.

3. NEGLIGENCE—EVIDENCE—QUESTIONS OF FACT.
      The weight of the evidence presented in a negligence action is
      a proper question for the jury and is not normally subject to
      appellate review.

4. NEGLIGENCE—TRIAL—JURY—PREJUDICE.
      The fact that a juror may have preconceived notions of law in
      an automobile accident case because he suffered a back injury
      in an automobile accident does not automatically disqualify
      him from sitting as a juror on all personal injury and negli-
      gence cases.

Appeal from Wayne, Joseph A. Moynihan, Jr., J.
Submitted Division 1 November 12, 1968, at Detroit.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3]  5 Am Jur 2d, Appeal and Error § 829.
[2]  38 Am Jur, Negligence § 344 *et seq.*
[4]  31 Am Jur, Jury §§ 173, 183.

(Docket No. 4,284.) Decided February 26, 1969. Rehearing denied April 4, 1969.

Complaint by Oscar F. Muylaert and Ann T. Muylaert against Marshall Erickson for injuries sustained by Oscar Muylaert after a fall from a ladder owned by defendant. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Michael A. Guest,* for plaintiffs.

*Ward, Plunkett, Cooney, Rutt & Peacock* (*Charles C. Warner* and *Jeannette A. Paskin,* of counsel), for defendant.

BEFORE: LESINSKI, C. J., and J. H. GILLIS and BEER,* JJ.

PER CURIAM. Plaintiff-husband was injured when he fell from a ladder owned by defendant while helping to paint defendant's house. A jury awarded damages to plaintiffs, husband and wife, and defendant appeals. Defendant contends that there was no showing of a breach of duty on which to predicate an action in negligence and that reversal is required because of prejudice on the part of one of the jurors. "Plaintiff" hereafter refers only to the husband.

Defendant had the duty to exercise ordinary care and prudence to render the premises reasonably safe for plaintiff's visit. *Genesee Merchants Bank & Trust Company* v. *Payne* (1967), 6 Mich App 204. The care required extends to instrumentalities which plaintiff uses at the invitation of defendant while on defendant's property.

Our initial consideration is whether plaintiff has sustained the burden of showing a defect in the lad-

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

der.   Since the ladder was destroyed by defendant shortly after plaintiff's injury occurred, proof of a defect rests solely on plaintiff's testimony as to whether the ladder collapsed or merely tipped over and then broke.   If it merely tipped over, there would be no liability on the part of defendant. *Nichols* v. *Bush* (1939), 291 Mich 473.

At trial, plaintiff testified as follows on direct examination:

"*Q.* Then what happened?

"*A.* The ladder broke.

"*Mr. Warner (attorney for defendant):* I am going to object to that.   I think that's a conclusion.

"*The Court:* No.   I will overrule the objection.

"*Q.* Now, at the time the ladder broke were you reaching over?

"*A.* No.   I was reaching right in front of me.

"*Q.* You were standing solid?

"*A.* I was standing solid on the ladder, yes.

"*Q.* Would the ladder sway or anything of that sort while you were on it?

"*A.* No.

"*Q.* Did the ladder tilt either way while you were on it?

"*A.* No.

"*Q.* The ladder was standing erect; is that what you want to tell us?

"*A.* Yes.

"*The Court:* How did the ladder break; what broke the ladder?

"*A.* The upright on the ladder broke, right below the first step.

"*Q.* Now, how do you know what broke on the ladder?

"*A.* When I was laying on the ground I looked over and seen it."

Cross-examination:

"*Q.* When did you first realize that you were falling or were going to fall?

"*A.* When did I realize I was going to fall?

"*Q.* Were you on the ground at that point?

"*A.* I was on the ground.

"*Q.* It happened so fast you were, bang, on the ground and that's all you really know?

"*A.* Yes."

Redirect examination:

"*Q.* Now, this probably is a very important question and it has been asked twice now. I will repeat it the third time and you make certain you are telling us the truth. On direct examination you told me that you were standing solidly on that ladder at the time it broke?

"*A.* Yes.

"*Q.* Is that true?

"*A.* Yes.

"*Q.* You weren't—your body was or was not extending either way?

"*A.* No.

"*Q.* You were standing solidly on the ladder at the time it broke?

"*A.* Yes."

Recross examination:

"*Q.* Mr. Muylaert, you indicated that you were standing very solidly straight up on both feet on the same step and not leaning either way at the time you fell—right?

"*A.* Yes.

"*Q.* O.K. At the same time, as I understand your testimony, you don't remember whether or not you were painting or wiping; is that right?

"*A.* That is right.

"*Q.* You don't remember whether or not you were reaching out to the side or whether you were working in front of you; is that right?

"*A.* Yes.

"*Q.* You don't remember exactly which step you were on—right?

"*A.* I was the fourth step from the bottom.

"*Q.* O.K., fourth from the bottom. You don't remember down from the top but you know how far up. You don't remember whether or not you were reaching and possibly putting your hand in that paint can getting the brush out; is that right?

"*A.* That is right.

"*Q.* The only thing you know about it is that you fell, that, wham, you were on the ground, you looked at the ladder and you had a broken leg; is that a fair statement?

"*A.* Yes."

Defendant contends that the above testimony tends no more to show that the ladder collapsed than that plaintiff was on the ground before he knew what happened. Analyzing the testimony and drawing conclusions therefrom, however, are proper jury functions and it is not within our province to substitute our judgment for the finding of the jury that the ladder collapsed.

Up to the time of plaintiff's injury, the ladder was in the care, custody and control of defendant. Shortly after the accident, defendant destroyed it, precluding plaintiff from producing it and precluding any examination of it which might have shown what the defect was and whether it would have been discovered by defendant in the exercise of reasonable care.

Without deciding whether defendant destroyed the ladder for the purpose of destroying evidence, the fact is that plaintiff's inability to produce the ladder was due to defendant's act and this act may not

operate to plaintiff's detriment. We are thus not constrained to withdraw from the jury on the basis of insufficient evidence the question of whether defendant exercised ordinary care and prudence to render the ladder reasonably safe for plaintiff's use.

Defendant had used the ladder regularly and had used it only 2 or 3 days prior to plaintiff's accident. Plaintiff admitted that he made a casual inspection of the ladder but testified that defendant told him prior to using the ladder that the ladder was in good shape and that he didn't have to worry about it. In light of the fact that the ladder was destroyed by defendant, there was a proper submission to the jury of the question of defendant's negligence within the purview of *Lipsitz* v. *Schechter* (1966), 377 Mich 685 (1 NCCA 4th 421). We will not second-guess the jury on the weight of the evidence presented.

Defendant also challenges the verdict of the jury on the basis that one of the jurors was improperly allowed to sit in this cause. The record shows that in a prior case, which counsel on oral argument agreed was an automobile accident case, the juror was disqualified for cause because he revealed to the court that he himself had been a victim of an automobile accident in which he suffered a back injury and that he had preconceived notions of liability and was too prejudiced to be able to render a fair and impartial verdict.

During the *voir dire* examination conducted in this case the trial court stated the facts of this case to the prospective jury, and inquired as to whether or not any of the prospective jurors were involved in an accident upon premises similar in nature or whether or not there was any reason why they could not sit and render an impartial verdict. The juror in question did not express an inability to sit. He was allowed to sit and as part of a 12-man jury par-

ticipated in rendering a unanimous verdict for plaintiff.

In scrutinizing the *voir dire* examination and the responses made by the prospective juror, we find no such inconsistencies as would give rise to disqualification for cause of the juror in the present case. While it may be true that the juror may have prejudices and preconceived notions of law in an automobile accident case because he himself was involved in litigation of this nature, it does not necessarily follow that in every other case of injury on wholly unrelated facts he would have such a preconceived notion of the law and be unable to render a fair and impartial verdict.

Affirmed. Costs to appellees.